I'd like to say that we're pleased to welcome Professor McDonald from Washington Lee Law School and his students who have come to observe the proceedings. The party's ready to proceed in Hobet Mining v. Carl Epling. All right, thank you. Let's begin then, please, Mr. Mattingly. Thank you, and may it please the court, I am William Mattingly, and I'm here on behalf of The court has asked the parties to focus their arguments on the rebuttal standard, and that's what I intend to do. The position that the Department of Labor has presented in their brief, as well as the revised 718.305 regulation, which is the regulation to apply in this case, are invalid. They failed to abide by the Supreme Court's decision in Usry v. Turner Elkhorn Mining and impose the exact same rebuttal standard on employers as the Secretary. Can I ask you a question about Usry? I don't know how to pronounce it. Why doesn't that footnote in Usry, is it footnote 40, where the court says, we're not saying you couldn't do this by regulation, we're just saying the statute doesn't mandate this result, but we are decidedly not passing on whether a regulation to the same effect would be consistent with the statute. Why doesn't that take that case right out of the picture here? It doesn't for several reasons. One, that footnote says that you could do things by regulation if in fact the statute allows it. And they're saying, we're not saying in this case that the statute does not allow it. So why aren't we just looking at the statute? Why is Usry in this case at all? They didn't tell us that the statute doesn't allow this. But they did interpret the statute, which is 30 U.S.C. 921C4. Right, but the statute just is silent as to mine operators, isn't that correct? It is. But it has to allow, as the Owens decision in the concurrence that Judge Niemeyer wrote, allow for the language the Supreme Court put into Usry, which is rebuttal if there is mild pneumoconiosis that might even cause part of the disability but isn't responsible for the disabling pulmonary impairment that prevents someone from going back to work. What is the language in Usry that requires that? It's on 34 and 35 of Usry where they talk about employers have to be allowed to show if there is mild pneumoconiosis present, it still may rebut the presumption of total disability due to pneumoconiosis. And they were saying that with regard to the secretary? They were saying that with regard to employers and what they would be allowed to rebut under that section. I really think in light of footnote 40 what they were saying is that the statute does not compel a result in which they're not allowed to rebut that way. And then in footnote 40 they say we're not saying that it precludes it either. Maybe it does, but we are distinctly not holding that in this case. So I just don't understand why this isn't just a regulation. If you have an argument to be made that the face of the statute precludes this regulation, that's one thing. But it seems so clear to me, and maybe I'm really missing something, that the court sort of declined to say what you wish it had said. That it expressly said we're not holding that the face of the statute precludes this result. Maybe it does, maybe it doesn't. We'll get to that another day. So I just don't see what the case adds to your case. If I may, I'll look at footnote 40 when I come back up for rebuttal and address that specifically. But what has happened in the arguments that have been made in these cases? First in Owens to this court, and then in the Gump decision that you were a part of the panel on Judge Floyd, and now today. The argument that the Department of Labor has presented has changed. Because here they agree, Ussery says what I say that it says. And they do that in their brief on page 38. They say that Owens is correct that the limitations in that section that applies the 15-year presumption only apply to the secretary. But then they say we don't have to be concerned about that because things have changed. Not the language of the statute that the Supreme Court interpreted at 921c4. But in Ussery, I thought the court was saying that the plain text of the act does not require the department to promulgate such a regulation. It doesn't say they can't. Well, the plain language of the act says a couple things. One of the things that the act says is in the purpose of the act at 901. And Congress defined the act as saying only those who were totally disabled due to pneumoconiosis are entitled to benefits. And then in 902f, they define total disability. And that is pneumoconiosis causes total disability when pneumoconiosis results in an impairment that prevents someone from going back to do their coal mine employment. If you are able to show that pneumoconiosis is not causing that disability, you have rebutted the presumption that's afforded claimants by virtue of the 15-year presumption. Don't we have to start logically, though, with we take your argument as to Ussery. We look to whether the statute deals with the operators. Statute doesn't deal with the operators. Then under Chevron, doesn't there have to be a place for a regulation addressing this? Why is that? It seems to me that it's almost necessary. Chevron has two steps. And Chevron came after Ussery as well. Yes. One, did Congress tell us? Right. And if they didn't, then we go and look and see what the agency's suggesting. And is it reasonable? I don't think we ever get to step two here. Because I think Ussery told us, here's the statute says the secretary can rebut in two ways, showing the absence of pneumoconiosis or the disability is not due to pneumoconiosis. But it doesn't say what the operator's rebuttal standard is. It doesn't. So the statute doesn't tell us then. But Ussery told us that the statute tells us that the operators cannot be limited the way the secretary is. And if there's another possibility that exists, then the operators have the ability to rebut that presumption. But don't we have a different landscape? How can Ussery preclude, pre-Chevron, preclude the implementation of regulations dealing with a gap in the statute? Ussery does because Ussery told us what the statute meant, as it applies to employers. But it didn't say anything. As Judge Harris said, footnote 40 clearly carves a place for substantive, interpretive, creative statutes, doesn't it? I mean, excuse me, regulations. And the director has that ability to interpret the statute, unless the Supreme Court already has. My argument is that by saying that that portion of the statute limited the secretary, operators cannot be so limited. And that's what Judge Niemeyer wrote in the concurrence in Owens, that in this act there are four elements that you have to show to be entitled to benefits, or to rebut someone's entitlement to benefits. Pneumoconiosis, pneumoconiosis arose out of coal mine employment, total disability, and then disability caused by pneumoconiosis. If we disagree with you that the statute provides a rebuttal standard for the miners, excuse me, for the operators, do you lose? No, because in this case the administrative law judge didn't do his job. He got it wrong when he talked about Dr. Hippensteel's opinion. He said Dr. Hippensteel didn't diagnose pneumoconiosis, so therefore, I'm not going to pay any attention to his opinion. Well, he initially didn't, but Dr. Hippensteel seems to me has a bigger problem perhaps in that he didn't recognize the progressive state of pneumoconiosis, and the ALJ was particularly concerned with that, it seemed to me. And then you have the second issue of Dr. Hippensteel saying he doesn't have pneumoconiosis, but then later saying, oh, yes, he does, but not addressing causation in that second finding. So why aren't those two independent bases to support the ALJ's decision that there was substantial evidence in favor of Mr. Epling? In other words, why isn't that enough to affirm the decision? It's not enough for a couple of reasons. One, when you look at the entirety of Dr. Hippensteel's analysis in this case, he had very early on said this is a close call, and in his deposition in 2011 used that language that there may be pneumoconiosis here. In 2011, when he offered that deposition, he said, I don't think pneumoconiosis is here when he was pushed. But he said, even if it is, it doesn't cause me to change my causation analysis, and here's why. He changed his opinion as to the existence of disease in 2012 when he had the opportunity for the first time to actually look at a CT scan of the chest, and there he saw changes that were consistent with pneumoconiosis, and he said, aha, I find pneumoconiosis, but this doesn't change my causation analysis. And when you look at his reports from 2011 and his testimony in that deposition, what he explained was that the entire picture presented by this gentleman, by Mr. Epling, he had normal ventilatory capacity. He had normal lung volumes. He had normal diffusion. Those didn't change. Those didn't suggest any progression. He had blood gas problems. The blood gas abnormalities, Dr. Hippensteel said, are not due to pneumoconiosis, but in this case, they're due to a combination of obesity and sleep apnea. So even though he has pneumoconiosis, the causation of his impairment is sleep apnea and obesity. That's what's causing this isolated blood gas abnormality. It's not the pneumoconiosis that we see on the X-ray. And Judge Keenan, that invalidates Judge Morgan's analysis, because Dr. Hippensteel did not tread too far and say pneumoconiosis can never be disabling. He acknowledged that it can be. He acknowledged it can be progressive, but he said, in this case, this isn't the type of progression you see with co-workers' pneumoconiosis. The constellation of abnormalities that he appreciated from the clinical studies simply did not show that this was pneumoconiosis causing the impairment. The director's argument has continued to change in these cases. And what they have suggested, Owens would apply, Usry does limit, but they suggest the definition of pneumoconiosis changed, which just isn't borne out by the history. The Bennett decisions from the Benefits Review Board that we attached to the brief show that long ago, everyone recognized a chronic coal mine dust-induced lung disease included things besides radiographic pneumoconiosis. In Usry, the Supreme Court spent several pages talking about the act's prohibition of denying a claim only with negative chest X-ray evidence. What changed in 1978 was an addition of the phrase, and sequelae, including respiratory and pulmonary impairments. Sequelae meaning condition caused by another disease or entity. The root definition of pneumoconiosis hadn't changed. It's still a chronic dust disease arising out of coal mine employment. What that 1978 change in the act did was to say, aha, there can be heart deficiencies caused by long-term lung deficiencies. Those should be compensated too. And the regulations reflect that in reflecting compensation for people with right-sided ventricular aperture for your core pulmonary. The director's point that the sequelae changed the definition of pneumoconiosis and in some way added pneumoconiosis is not true. Legal pneumoconiosis is always present in this act because the act enveloped that definition by defining it as a chronic dust disease arising out of coal mine employment. Thank you. Next, Mr. Bukowski. Is that correct? Bukowski. Good morning, Your Honors. My name is Sean Bukowski, and I represent the Department of Labor's Office of Workers' Compensation Programs. I agree with what I understand to be Judge Harris's point that the key case, the key authority in this case is Chevron, not USSRI. The employer is trying to get quite a bit out of USSRI, but the point it's looking for just isn't in the case. USSRI says absolutely nothing about what an employer must establish to rebut the 15-year presumption. And it certainly doesn't say anything like an employer can rebut the presumption by showing that there's no substantial link between pneumoconiosis and disability. At most, at absolute most, USSRI says it might be a due process issue that we'd have to think about if the regulation prevented an operator from rebutting the presumption by showing that there was absolutely no link at all, that the disability was wholly, as the Supreme Court put it, the result of some other disease. But that is exactly what the regulation allows them to do. An employer is allowed to rebut the presumption by showing that the minor doesn't have pneumoconiosis. And if it does so, that's under the same standards that apply to a minor in an affirmative case. And if they can't do that, the employer has the option to prove that no part of the disability is caused by the pneumoconiosis. That's the rule of standard. That's been in the Department of Labor's regulations since 1980. It has been, it was at least explicitly reaffirmed by Congress when they reenacted Section 921C4 with no amendment. It's identical to the standard that applied under the now defunct, but a very similar interim presumption, which could also be rebutted by showing that no part of the disability or the disability in whole or in part was not related to coal dust. That this court upheld in Bethlehem Coal versus Massey, where the employer had argued that this was unduly restricted. And this court said, no, that regulatory rebuttal standard is within the Department of Labor's regulatory authority. Counsel, how do you explain, though, the difference between that standard and then the difference in the affirmative showing that a claimant has to make where they have to show that it is, that the pneumoconiosis is a substantially contributing cause? I mean, even if I'm with you so far in the argument, why should those two things be different? I think it's explained in the preamble to the regulation. The point is that a minor who has 15 years of coal mine employment is not similarly situated to a minor who doesn't. And it's rational to impose a more restrictive rebuttal standard than a claimant who didn't have 15 years would have to prove to affirmatively establish his or her case. If we agree with you that the rule-out standard is an appropriate exercise of regulatory authority, can you tell us how an employee could ever, as a practical matter, show that pneumoconiosis played no part in the minor's disability? I mean, is there any avenue left open for an employer? I'm having a hard time with that conceptually. Could you help on that? Certainly. I think you don't have to look any further than the opinion of Dr. Hippensteel in this case. I mean, Dr. Hippensteel's opinion is legally sufficient to support rebuttal. In his last report, Dr. Hippensteel said, yes, this minor has pneumoconiosis, so the employer can't rebut under the first method. But he said that all of the disability is due to these other conditions, apnea and obesity. If the ALJ had found that reasoning to be credible, that would have been legally sufficient to rebut the presumption. The problem isn't that the ALJ applied this, you know, said that the opinion was legally insufficient to establish rebuttal. The ALJ just thought that Dr. Hippensteel was not credible because Dr. Hippensteel didn't explain his disability causation analysis sufficiently after he reached the conclusion that there was pneumoconiosis. Mr. Mattingly says that's not true. Could you respond? I think that... With references to the record? Certainly. In the... I think that an ALJ... I think an ALJ probably could have gone either way on whether it was fair for, whether it was adequate for Dr. Hippensteel to sort of import his previous disability causation analysis sort of into his very last opinion where he acknowledged that there is pneumoconiosis. But I don't think an ALJ is required to do that. I don't think that... I think it's reasonable to think that, once the doctor acknowledges that, oh, hey, there is this new lung disease that I didn't recognize before that's caused by dust, it's pneumoconiosis, that the doctor should provide a new explanation even if it ends up being analytically mostly the same, but should re-explain why this new fact doesn't change the prior analysis. Can we affirm the ALJ based on substantial evidence? And if so, what is the substantial evidence? I think the substantial evidence is the minor's invocation of the presumption. So the minor had 15 years of qualifying coal mine employment. The minor established a totally disabling respiratory condition and the employer's failure to rebut it. The employer didn't show that the minor didn't have pneumoconiosis.  that the minor has pneumoconiosis and the employer's evidence on whether the pneumoconiosis contributed at all to the disability, that was Dr. Hippensteel's opinion and the ALJ rationally discredited it. Now, obviously, if the court disagrees that the ALJ's analysis of Dr. Hippensteel's opinion was sufficient, the case should be remanded for the ALJ to make more specific findings on that, but I don't think that's necessary. And I also wanted to sort of briefly address one thing that Mr. Mattingly brought up in his argument, which was that there was no change in the meaning of pneumoconiosis in 1978. I think that's just not true and I think the clearest example of that is the Ussery case, the very case that the employer here relies on.  on page 34 and 35 of Ussery, the Supreme Court is saying that you could have a minor who is totally disabled by a respiratory impairment that arises out of his employment but nevertheless doesn't have pneumoconiosis. Now, in a world with legal pneumoconiosis, that's just unintelligible. And then they go on to say, the Supreme Court does, that the minors are about by showing the disability was caused by another disease such as emphysema, and again, they're referring to the emphysema caused by coal mine employment. Now, emphysema, if you have emphysema caused by coal mine employment and you're disabled by the emphysema, you are, that's a textbook legal pneumoconiosis case where the minor's entitled to benefits, whether there's a presumption or whether there isn't. So I think even if there were some Social Security Administration cases or a board decision here or there that seem to go, seem to sort of anticipate the development of legal pneumoconiosis, it's simply contrary to what the Supreme Court says and they're the final word. Now, I mean, it's also sort of understandable because you have this historical evolution. Initially in 1969, you have only, Congress is only really concerned about clinical pneumoconiosis. In 1972, there's sort of mixed evidence before Congress about whether other, whether minors are particularly susceptible to other diseases. So Congress in 72 sort of takes a half step towards recognizing legal pneumoconiosis and they did that by the 15-year presumption and they did that by forbidding a claim being denied solely based on a negative chest X-ray. So, you know, the effect of those may have been to let some minors who were, who, you know, if we could, you know, had a God's eye view, didn't have clinical pneumoconiosis get benefits, but still the presumption was a presumption that you are disabled by clinical pneumoconiosis. It wasn't until 1978 with the amendment that expanded the definition of pneumoconiosis to respiratory pulmonary impairments arising out of coal mine employment that, you know, you have a full-throated legal pneumoconiosis recognized as a independent basis for a minor to recover benefits under the act. If the court has no further questions. Thank you, Your Honors. Yes, thank you. And we'll hear now from Mr. Staten. May it please the court. I'm Leonard Staten. I'm here today on behalf of the claimant, Mr. Carl Epling. While I agree with the director that the rule-out standard applies to employers with regard to rebuttal under 30 U.S.C. 921c4, in this case, regardless of what the court rules with regard to whether it applies to employers, it does not apply to Mr. Epling's case. As the employer acknowledged at page 36 of their opening brief, the administrative law judge did not use the rule-out standard to award benefits in this case. Rather, he weighed the evidence, both pro and con, and found that the employer had failed to establish that the minor's pulmonary impairment had not been contributed to by his coal mine dust exposure. With regard to the substantial evidence that we have in this case, we have opinions from Drs. Ranavalia, Crosali, and Hippensteel. The administrative law judge found the opinions of doctors, or found Drs. Crosali and Ranavalia to be the best-qualified physicians and found Dr. Hippensteel to be less qualified. Both Dr. Crosali and Dr. Hippensteel said that there was no obstruction, restriction, no reduction in the diffusing capacity or air trapping, and therefore the minor's pulmonary impairment was not contributed to by his coal mine dust exposure. In the administrative law judge's 2009 decision, he viewed those opinions with skepticism. And the reason he viewed those opinions with skepticism is under the Federal Black Lung Act, a minor can prove total disability due to pneumoconiosis by either proving a ventilatory impairment that's demonstrated by his pulmonary function studies or by a gas exchange impairment that's demonstrated by his arterial blood gas studies. The obstruction, restriction, reduction in the diffusing capacity and air trapping are all measures of pulmonary impairment that are demonstrated by pulmonary function studies. So in this case, what Dr. Hippensteel was saying was that because there was no pulmonary impairment demonstrated by the pulmonary function studies, the pulmonary impairment demonstrated by the arterial blood gas studies could not have been caused by his coal mine dust exposure. In the judge's 2009 decision, he stated that he viewed that opinion with skepticism, but since there was no pneumoconiosis proved, he denied benefits. Now, by the time we came to the judge's 2012 decision, we had a different set of facts. We had positive CT scan evidence establishing pneumoconiosis, and we also had the testimony of Dr. Ranavalia, who at that time had the opportunity to review the complete record and was able to give a more complete statement concerning whether the miner had pneumoconiosis and whether his coal mine dust exposure was a cause of his pulmonary impairment. The administrative law judge at that time found pneumoconiosis to have been established and found this case to come under the line of cases from this court of Scott v. Mason Coal Company. Of course, under Scott v. Mason Coal Company, if a physician mistakenly does not diagnose pneumoconiosis, then his opinion concerning causation of disability cannot constitute substantial evidence as to the cause of the disability. And can I just ask, and that's true even if he states his opinion in the alternative, one, I think he doesn't have pneumoconiosis, but two, even if I did, I would still say there's no causation? That's correct, Your Honor. In Scott v. Mason Coal Company, that exact scenario was present. Both doctors said, well, his pulmonary impairment is not caused by his coal mine dust exposure because he doesn't have pneumo, but even if he did have pneumoconiosis, it still wouldn't cause it. And the court said that was just a superficial statement and it bore no end result on whether the- Conclusory remark. Right, right. And that's the same thing I think that Dr. Hibben still did in this case in his initial set of reports where he did not diagnose pneumoconiosis. And so as I've stated, both Dr. Hibben still and Dr. Crisali gave the same reasons for why the miner's coal mine dust exposure had not been contributed to by his pulmonary impairment. Now, it's interesting in this case is that even though the administrative law judge found Dr. Crisali to be the better qualified of the two employers' physicians, they have not contested the judge's rulings with regard to Dr. Crisali. So Dr. Crisali's, the judge's statements that Dr. Crisali's opinion is insufficient to prove that the miner's pulmonary impairment was not caused by his coal mine dust exposure are now the law of the case. It's my position that since Dr. Hibben still gave those exact same reasons,  from establishing causation of disability due to the law of the case. Furthermore, even if you accept Dr. Hibben still's statement in his 2019-12 report that the miner had no disabling intrinsic pulmonary disease, that flies in the face of the findings of the administrative law judge. In both the 2009 and the 2012 decisions by the administrative law judge, he found that the miner did have a totally disabling pulmonary impairment. Furthermore, the judge found that he had invoked the presumption of 30 U.S.C. section 921c4, and the employer has not contested that invocation. A necessary element of the invocation of the presumption is that he does have a totally disabling pulmonary impairment. Therefore, Dr. Hibben still's statement that he had no pulmonary impairment flies in the face of that and cannot stand. Even if Dr. Hibben still's opinion could be given, that one sentence could be given any weight, the administrative law judge was still justified in rejecting it. As far as substantial evidence that refutes that opinion, we have the opinion of Dr. Radhavaya. As noted, Dr. Hibben still stated that the miner was obese and had obstructive sleep apnea, and those two conditions contributed to his gas exchange impairment. Dr. Radhavaya stated, first of all, with regard to the obesity, that his obesity would not have caused the gas exchange impairment on exercise. And the reason for that was that Dr. Radhavaya explained that obesity can affect the gas exchange when the miner is sitting, because when the resting study is performed, it's performed in a seating position. And as Dr. Radhavaya described it, the obesity squishes the lungs and keeps them from expanding fully. So a gas exchange impairment can occur. When the exercise study is done, the miner is in a standing position. So if he is obese, his large abdomen is off of his lower lung units, so they can expand. And as Dr. Radhavaya testified, that doesn't affect the gas exchange impairment. So since there was desaturation during the exercise study of Dr. Radhavaya, Dr. Radhavaya explained that the obesity would not have caused that. Dr. Radhavaya also testified that if the obesity had caused the arterial blood gas study abnormalities, then you would have had a reduced force vital capacity. In this case, Dr. Radhavaya testified that the force vital capacity was completely normal. Therefore, the obesity was not a factor. Furthermore, we argue their opinion that there was pulmonary hypertension. Pulmonary hypertension is opposed to what we normally call hypertension, only deals with pulmonary pressure of the arteries in the lungs, not systemic hypertension, as opposed to what we normally talk about in high blood pressure. Dr. Radhavaya noted that there was no study done in this record to determine whether pulmonary hypertension was present. Therefore, he questioned how either Dr. Crisale or Dr. Hippensteel could have said that pulmonary hypertension was present. In conclusion, I would submit that this is a substantial evidence case, not a question of whether the rule of standard applies. I would respectfully request that you find that the administrative law judge had substantial evidence upon which to base his opinion and to affirm his award of benefits. Thank you. All right, sir. Thank you very much. Mr. Mattingly, your rebuttal. Judge Harris, I've had a chance to look at footnote 40 and where it came from in the Usry decision. It comes from the court's discussion of the 1972 regulations that were promulgated that were not challenged by the operators in this case. And then footnote 40 says, it follows from our discussion of the 15-year limitation on rebuttal. These regulations cannot stand as authoritative administrative interpretations of the statute itself, but the role of the regulations is not merely interpretive. They may instead be designedly creative in a substantive sense, if so authorized. The regulations promulgated here are to be upheld. If they are to be upheld, it must be in the latter sense. This is a Chevron 2 case. So I still don't think it's a Chevron 2 case because of what the Supreme Court said previous to that footnote in Usry, where the court said in discussing the operator's challenge to the 15-year presumption that the operators had been deprived of a defense that the minor is not totally disabled due to pneumoconiosis as defined at 902F of the act. And when you look at that, disability has to be defined as substantially caused by pneumoconiosis. Otherwise, the purpose of the act is not being fulfilled because you're compensating people who are not disabled due to pneumoconiosis. So stepping back, what happens with this 15-year presumption? Someone works for more than 15 years in the mines. They have a disabling lung disease. It's presumed to be pneumoconiosis and it's presumed the pneumoconiosis is causing the disability. In this case, Dr. Hippensteel agrees. He has pneumoconiosis,  for a whole series of reasons. As Counsel for the Director admitted, that's legally sufficient to rebut the presumption. Here, the Administrative Law Judge never considered that because he threw his opinion out because he said, well, he's been wishy-washy on diagnosing pneumoconiosis. In fact, I don't think he did. That's clearly wrong because in his 2012 reports that are in the Joint Appendix, he diagnoses pneumoconiosis. This is not a Scott V. Mason situation where a doctor is giving alternatives and arguing in the alternative. Dr. Hippensteel all along has said, whether this man has pneumoconiosis or not, he does not have an intrinsic lung disease. He has extrinsic factors causing the impairment and that's obesity and that's sleep apnea. It's not a lung disease and he explains why because the ventilatory studies, the diffusions and the lung volumes are all normal. You put that together with what the Administrative Law Judge did here, he didn't correctly consider that opinion. So this matter is, his decision is not based on substantial evidence. It has to go back. So you say, are you saying that Island Creek Coal versus Compton helps you out in this situation? I think it does. And I even think Bethlehem's Mine Corporation versus Massey helps me out. It's a 727 case. The predecessor regulations that had a 10-year presumption, kind of like the 15-year presumption. The Fourth Circuit used the phrase rule out and that became the focus of everything. But later on in that same decision, the panel explained that what it meant by rule out. You had to show that the combined effects of several diseases presenting in the minor causing disability. When that occurs, the employer doesn't meet the burden of rebuttal by focusing only on the disabling potential of pneumoconiosis, but rather must establish the minor's primary condition, whether it be emphysema or some other pulmonary disease was not aggravated to the point of total disability by prolonged exposure to coal mine dust. And that aggravation to the point of disability is consistent with the way the act defines disability. Right, but Massey's not really entirely your friend, is it? No, because it uses the phrase rule out. It's talking about the remedial purposes of the Black Lung Act. They can't be achieved if the claimants are held to a standard of proof, approaching medical certitude. I mean, it clearly is emphasizing the workers' comp analogy. And all those functions are achieved in the 15-year presumption because by virtue of someone working 15 years and having a disability, regardless of its cause, we're presuming it's due to pneumoconiosis. The burden then shifts for the operator or the directors to say that it's not pneumoconiosis, that the disability's not due to pneumoconiosis, or as I think Usry leaves the door open in defining the statute, that an operator can't be limited in the evidence presented and the operator can show that pneumoconiosis is mild and not causing disability. Yeah, I'm a little confused as to how Compton helps you because it seems to me that Compton is saying that the ALJ can discredit a causation opinion when there's a problem with the causation analysis. You can't just discount it because the doctor didn't examine the patient. That's correct. And so if there's a defect in the causation analysis, that is a basis for discrediting the opinion. You agree with that? If there is a defect, there is. Compton helps in the doctor. There was no defect in Dr. Hippensteel's analysis. Correct. And Dr. Hippensteel didn't do an examination. So from that standpoint- Well, that wouldn't be a basis according to Compton. But if there is a deficiency in the causation analysis, then that would be a basis. It would be. And the deficiency that the ALJ identified was he thought Dr. Hippensteel didn't diagnose pneumoconiosis. And that's not what this record shows. The record shows that Dr. Hippensteel ultimately did diagnose pneumoconiosis. And in those prior opinions said, even if pneumoconiosis is present, it's not causing the impairment because this man doesn't have an intrinsic lung disease. It's an extrinsic disease putting pressure on his lungs. Can I ask you just a quick question about the language you just quoted from that case, about whether the pneumoconiosis aggravated, played a sort of an aggravating role. You think that's a different inquiry than whether it had played no part in the total disability? I think it puts a different spin on- That sounds exactly the same to me. Isn't that what we're getting at? Like, well, maybe it didn't cause it, but the lung cancer is worse because it aggravated it. It was worse because, and it seemed like exactly two sides of the same coin to me. In fact, if that would be the case, it would be two sides of the same coin. I don't think it is because of the way the ALJs are interpreting the rule out standard. They, may I finish? Please. The ALJs interpret rule out as showing absolutely no possibility under any circumstance that pneumoconiosis or cold us played any role in causing, contributing or aggravating to this man's disease. That's not what the act envisions for proof of disability. It's a substantially contributing- No, I totally understand your statutory argument, but you think that is different from the aggravation language in the Bethlehem case because I don't really see the space there. I think what's happened is that rule out language has been modified and morphed that it doesn't mean when you read the entire case. Thank you very much. We'll come down to Greek Council and then we'll proceed to our next case.
judges: Barbara Milano Keenan, Henry F. Floyd, Pamela A. Harris